**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JULIE D. FRIEDEWALD, | |
| Plaintiff | |
| vs. | Case No. |
| SUMMIT CENTER FOR HEALTH, LLC, an Illinois Corporation, LIPOGEMS INTERNATIONAL, SpA, an Italian Corporation, LIPOGEMS USA, INC., a Georgia Corporation, LIPOGEMS USA HOLDINGS, LLC, a Georgia Limited Liability Corporation, LIPOGEMS SPO, LLC, a Georgia Limited Liability Corporation, MARK J. HOLTERMAN, M.D., and CARLO TREMOLADA, M.D., | |
| Defendants. | |

## COMPLAINT AT LAW

Plaintiff JULIE D. FREIDEWALD, by and through her attorneys BARNEY & KARAMANIS, LLP, and in complaining of Defendants SUMMIT CENTER FOR HEALTH, LLC, an Illinois Corporation, LIPOGEMS INTERNATIONAL, SpA, an Italian Corporation, LIPOGEMS USA, INC., a Georgia Corporation, LIPOGEMS USA HOLDINGS, LLC, a Georgia Limited Liability Corporation, LIPOGEMS SPO, LLC, a Georgia Limited Liability Corporation, MARK J. HOLTERMAN, M.D., and CARLO TREMOLADA, M.D., states as follows:

## NATURE OF THE ACTION

1.     Plaintiff JULIE D. FRIEDEWALD was injured from the negligent use of the Lipogems system (hereafter the "Product"), a medical device which was designed, developed, tested, licensed, manufactured, labeled, marketed, and/or sold by Defendants LIPOGEMS INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC, and

1

LIPOGEMS SPO, LLC, (hereafter collectively referred to as "LIPOGEMS"), by various medical

personnel at Summit Center for Health, including but not limited to Defendants, Mark J.

Holterman, M.D. and Carlo Tremolada, M.D..

## PARTIES

**2.**    Plaintiff JULIE D. FRIEDEWALD is an individual residing in Granger, Indiana.

**3.**    At all times relevant hereto, Defendant LIPOGEMS INTERNATIONAL, SpA is

an international corporation, with operations in the United States and its headquarters in Milano,

Italy.

**4.**    At all times relevant hereto, Defendant LIPOGEMS USA, INC., is an

international corporation, with operations in the Northern District of Illinois of the United States

with its principal place of business in Atlanta, Georgia.

**5.**    At all times relevant hereto, Defendant LIPOGEMS USA HOLDINGS, LLC, is a

Georgia limited liability company doing business in the Northern District of Illinois, and upon

information and belief all its members / owners reside in or around Atlanta, Georgia.

**6.**     At all times relevant hereto, Defendant LIPOGEMS SPO, LLC, is a Georgia

limited liability company doing business in the Northern District of Illinois, and upon

information and belief all its members / owners reside in or around Atlanta, Georgia.

**7.**    Upon information and belief, LIPOGEMS INTERNATIONAL, SpA, owns and

operates LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC, and LIPOGEMS SPO,

LLC.

**8.**    Upon information and belief, LIPOGEMS INTERNATIONAL, SpA used

LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC, and LIPOGEMS SPO, LLC in

the creation, design, manufacture, testing, licensing, marketing, labeling, distribution, and sale of

the Lipogems System (the "Product").

2

9.      At all times relevant hereto, Defendant CARLO TREMOLADA, M.D. was the President of Defendants, LIPOGEMS INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC, and LIPOGEMS SPO, LLC.

10.     At all times relevant hereto, Defendant CARLO TREMOLADA, M.D. was a physician who was not licensed to practice medicine in the state of Illinois.

11.     At all times relevant hereto, Defendant SUMMIT CENTER FOR HEALTH, LLC, was an Illinois limited liability corporation doing business in Oak Brook, Illinois within the Northern District of Illinois (hereafter referred to as "SUMMIT").

12.     At all times relevant hereto, Defendant MARK J. HOLTERMAN, M.D., was a physician licensed to practice medicine in the state of Illinois.

13.     At all times relevant hereto, Defendant MARK J. HOLTERMAN, M.D., was an actual and/or apparent agent, servant, and/or employee of Defendant SUMMIT, and was acting within the scope of his employment.

14.     At all times relevant hereto, on or around May 9, 2015, Plaintiff JULIE D. FRIEDEWALD was the patient of and under the care and treatment of Defendants SUMMIT and MARK J. HOLTERMAN, M.D. in Cook County, Illinois.

15.     Defendants LIPOGEMS, individually and by and through their actual and/or apparent agents, employees, officers, and/or directors, including but not limited to Defendant CARLO TREMOLADA, M.D., designed, developed, manufactured, tested, marketed, promoted, distributed, and sold the Lipogems System. In doing so, LIPOGEMS placed the product in the stream of commerce in Illinois and throughout the United States. LIPOGEMS has received, and will continue to receive, substantial benefits and income through its activities. LIPOGEMS authorized the actions attributed to it herein through their actual and/or apparent agents,

3

employees, officers, directors, and/or servants, including but not limited to Defendant CARLO TREMOLADA, M.D.

16.     At all times relevant hereto, Defendants LIPOGEMS, Individually and by and through their actual and/or apparent agents, employees, officers, and/or directors, including but not limited to Defendant CARLO TREMOLADA, M.D., was in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, warranting, marketing, promoting, advertising, distributing, selling, and/or introducing into interstate commerce, either directly or indirectly, through third parties or related entities, the Product medical device known as the Lipogems System.

17.     At all times relevant hereto, Defendants LIPOGEMS, Individually and by and through their actual and/or apparent agents, employees, officers, and/or directors, including but not limited to Defendant CARLO TREMOLADA, M.D., designed, developed, manufactured, promoted, marketed, distributed, tested, warranted, and sold the Lipogems System in interstate commerce and in Cook County, Illinois. LIPOGEMS, individually and by and through their employees, officers, agents, and/or directors, including but not limited to Defendant CARLO TREMOLADA, M.D., conducted substantial business at this location in the Northern District of Illinois, advertised the Lipogems Systems in this District, received substantial compensation and profits from sales of the Lipogems System in this District, and made material omissions and misrepresentations and committed breaches of warranties in this District.

18.     A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Northern District of Illinois.

**FACTUAL ALLEGATIONS**

19.     Upon information and belief, at all times relevant hereto, Defendants LIPOGEMS, individually and by and through their actual and/or apparent agents, employees, affiliates, subsidiaries, and/or representatives, including by not limited to Defendant CARLO TREMOLADA, M.D., was involved in developing, designing, testing, manufacturing, and/or marketing the Product known as the Lipogems System.

20.     Defendants LIPOGEMS, individually and by and through their actual and/or apparent agents, employees, affiliates, subsidiaries, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., developed, designed, manufactures, and markets a medical device known as the Lipogems System. The Lipogems System is a suction lipoplasty system used for the lipoaspiration, processing and deployment of adipose tissue. The objective of the Lipogems system is to "favor the natural regenerative process of tissues and it is used in numerous pathologies." (*See* Exhibit A, copy of Lipogems webpage).

21.     The Lipogems system's intended effect is to transfer autologous adipose tissue for aesthetic body contouring in applications ranging from plastic and reconstructive surgery, neurosurgery, gastrointestinal and affiliated organ surgery, urological surgery, general surgery, orthopedic surgery, gynecological surgery, thoracic surgery, and laparoscopic surgery. It was well known that the Lipogems system contains and produces growth-factors that activate and stimulate both adipose tissue cells and surrounding cells to proliferate.

22.     The proliferation of cells through the Lipogems system leads to the expansion of tissue in the treated area and can cause damage to surrounding structures if there is not adequate room to accommodate this expansion.

23.     Defendants LIPOGEMS, individually and by and through their employees, agents, principles, and/or representatives, including but not limited to Defendant CARLO

TREMOLADA, M.D., never disclosed any warnings, promotional or marketing materials that the Lipogems system can cause vascular damage, leading to serious injuries including but not limited to blindness, if injected too close to surrounding vessels. Instead, Defendants LIPOGEMS sponsored Lipogems conferences for doctors and represented that Lipogems is well-tolerated, safe, and effective. These LIPOGEMS sponsored medical conferences promote the Lipogems system as a panacea for numerous ailments, including soft tissue injuries, arthritis, cosmetic and reconstructive surgery, gynecological tissue regeneration, and in cardiovascular and neurological tissue regeneration procedures. Side effects are rarely mentioned and consistently understated.

24.     As promoted by Defendants LIPOGEMS and CARLO TREMOLADA, M.D., Plaintiff JULIE D. FRIEDEWALD's physicians, including but not limited to Defendant MARK J. HOLTERMAN, M.D., Individually and as an actual and/or apparent agent, servant, or employee, of Defendant SUMMIT, recommended the Lipogems System treatment for bilateral cheek injections.

25.     On May 9, 2015, Plaintiff JULIE D. FRIEDEWALD underwent a lipoaspiration and bilateral cheek injection procedure at Summit Center for Health, where she came under the care and treatment of the actual and/or apparent agents, servants, and/or employees of Defendant SUMMIT, including but not limited to Defendants MARK J. HOLTERMAN, M.D. and CARLO TREMOLADA, M.D.

26.     During the aforementioned procedure, Plaintiff was operated on by Defendant CARLO TREMOLADA, M.D., a physician who is not licensed to practice medicine in the State of Illinois.

27.     Subsequently, Plaintiff JULIE D. FRIEDEWALD was then and there injured both internally and externally; that she suffered from a shock to her nervous system; and other systems of

her body; that she suffered acute and prolonged physical and mental pain and suffering; she became liable for great sums of money for medical, hospital care and treatment, as well as incurring other expenses; and that she sustained permanent disability as a result of the subject occurrence.

## COUNT I

**PRODUCT LIABILITY/FAILURE TO WARN – DEFENDANTS LIPOGEMS INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC, LIPOGEMS SPO, LLC and CARLO TREMOLADA, M.D.**

**1-27.** Plaintiff JULIE D. FRIEDEWALD hereby repeats and re-alleges paragraphs 1 through 27 of this Complaint as paragraphs 1 through 27 of Count I, as though fully set forth herein.

**28.** At all times relevant hereto, Defendants LIPOGEMS, individually and by and through its actual and/or apparent agents, servants and/or employees, including but not limited to CARLO TREMOLADA, M.D., had a duty to warn others that the Lipogems system can cause blindness when used in cosmetic and reconstructive procedures of the face.

**29.** Contrary to the aforementioned duty, Defendants LIPOGEMS, individually and by and through their actual and/or apparent agents, servants and/or employees, including but not limited to CARLO TREMOLADA, M.D., failed to adequately warn of the aforementioned risks.

**30.** As a result of Defendants LIPOGEMS', individually and by and through their actual and/or apparent agents, servants and/or employees, including but not limited to CARLO TREMOLADA, M.D., failure-to-warn defect, the Lipogems system was unreasonably dangerous to an ordinary person, like Plaintiff JULIE D. FRIEDEWALD, who used the Lipogems system in a manner in which it was intended to be used by LIPOGEMS or in a manner in which LIPOGEMS could have reasonably foreseen. The risks of the Lipogems system were known by LIPOGEMS or were reasonably scientifically knowable at the time JULIE D. FRIEDEWALD was injured.

**31.** An ordinary user of the Lipogems system would not foresee the risk of blindness or other vascular and neurological damage, particularly in light of LIPOGEMS' intentional minimization of the risks of the Lipogems system.

**32.** The lack of sufficient warnings was a substantial factor in causing Plaintiff JULIE D. FRIEDEWALD's injuries and damages. If LIPOGEMS had informed Plaintiff FRIEDEWALD or her health care providers of the known risks of the Lipogems system, she would have refused the Lipogems treatment.

**33.** As a direct and proximate result of the defects in the Lipogems system and the conduct of Defendants LIPOGEMS, individually and by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., Plaintiff JULIE D. FRIEDEWALD suffered acute and prolonged physical and mental pain and suffering, including but not limited to permanent blindness in her right eye, and has become liable for great sums of money for medical care and treatment and additional expenses.

WHEREFORE, Plaintiff JULIE D. FRIEDEWALD, by and through her attorneys BARNEY & KARAMANIS, LLP, prays for judgment against Defendants LIPOGEMS INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC, LIPOGEMS SPO, LLC, and CARLO TREMOLADA, M.D., in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and proper.

## COUNT II

**PRODUCT LIABILITY/MANUFACTURING DEFECT – DEFENDANTS LIPOGEMS INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC, LIPOGEMS SPO, LLC and CARLO TREMOLADA, M.D.**

**1-33.** Plaintiff JULIE D. FRIEDEWALD hereby repeats and re-alleges paragraphs 1 through 33 of Count I as paragraphs 1 through 33 of Count II, as though fully set forth herein.

**34.** Defendants LIPOGEMS, Individually and by and through its actual and/or apparent agents, employees, servants and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., is the manufacturer, distributor and supplier of Botox. The product reached Plaintiff JULIE D. FRIEDWALD without a substantial change in its condition upon leaving the control of Defendants LIPOGEMS.

**35.** The Lipogems system used on Plaintiff JULIE D. FRIEDEWALD contained a defect in its manufacture. This defect in the Lipogems system existed at the time the Lipogems system left the possession and control of Defendants LIPOGEMS.

**36.** The Lipogems system was used on Plaintiff JULIE D. FRIEDEWALD in a manner foreseeable to Defendants LIPOGEMS.

**37.** As a direct and proximate result of the defects in the Lipogems system and the conduct of Defendants LIPOGEMS, individually and by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., Plaintiff JULIE D. FRIEDEWALD suffered acute and prolonged physical and mental pain and suffering, including but not limited to permanent blindness in her right eye, and has become liable for great sums of money for medical care and treatment and additional expenses.

WHEREFORE, Plaintiff JULIE D. FRIEDEWALD, by and through her attorneys BARNEY & KARAMANIS, LLP, prays for judgment against Defendants LIPOGEMS

9

INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC,

LIPOGEMS SPO, LLC, and CARLO TREMOLADA, M.D., in an amount in excess of Seventy-

Five Thousand and No/100 Dollars ($75,000.00), and for such other and further relief in favor of

Plaintiff as this Court deems just and proper.

**COUNT III**
**NEGLIGENCE – DEFENDANTS LIPOGEMS INTERNATIONAL, SpA, LIPOGEMS**
**USA, INC., LIPOGEMS USA HOLDINGS, LLC, LIPOGEMS SPO, LLC and CARLO**
**TREMOLADA, M.D.**

**1-37.**   Plaintiff JULIE D. FRIEDEWALD hereby repeats and re-alleges paragraphs 1

through 37 of Count II as paragraphs 1 through 37 of Count III, as though fully set forth herein.

**38.**   Defendants LIPOGEMS, individually and by and through its actual and/or

apparent agents, employees, servants, and/or representatives, including but not limited to

Defendant CARLO TREMOLADA, M.D., was negligent in designing and marketing the

Lipogems system and such negligence was a proximate cause of the injuries and damages

sustained by Plaintiff JULIE D. FRIEDEWALD.

**39.**   Defendants LIPOGEMS, individually and by and through its actual and/or

apparent agents, employees, servants, and/or representatives, including but not limited to

Defendant CARLO TREMOLADA, M.D., was negligent in one or more of the following ways:

   **a.**   Marketing and making available the Lipogems system even though it was
        a dangerous, defective, and deficient device; and

   **b.**   Failing to provide Plaintiff JULIE D. FRIEDEWALD and health care
        providers with sufficient information as to the device's known dangers and
        risks, including blindness.

**40.**   Defendants LIPOGEMS, individually and by and through its actual and/or

apparent agents, employees, servants, and/or representatives, including but not limited to

Defendant CARLO TREMOLADA, M.D., was further negligent in designing the Lipogems

system and such negligence was a proximate cause of injuries and damages sustained by Plaintiff JULIE D. FRIEDEWALD.

41.     As a direct and proximate result of one or more of the aforementioned deviations from the standard of care on the part of Defendants, Plaintiff JULIE D. FRIEDEWALD has suffered from and continues to suffer from severe and permanent injuries.

WHEREFORE, Plaintiff JULIE D. FRIEDEWALD, by and through her attorneys BARNEY & KARAMANIS, LLP, prays for judgment against Defendants LIPOGEMS INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC, LIPOGEMS SPO, LLC, and CARLO TREMOLADA, M.D., in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and proper.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY – DEFENDANTS LIPOGEMS**
**INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC,**
**LIPOGEMS SPO, LLC and CARLO TREMOLADA, M.D.**

1-41.     Plaintiff JULIE D. FRIEDEWALD hereby repeats and re-alleges paragraphs 1 through 41 of Count III as paragraphs 1 through 41 of Count IV as though fully set forth herein.

42.     Prior to the time the Lipogems system was used on Plaintiff JULIE D. FRIEDEWALD, Defendants LIPOGEMS, individually and by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., impliedly warranted to Plaintiff and her health care providers that the Lipogems system was of a merchantable quality and safe and fit for the use in which it was intended.

43.     Plaintiff JULIE D. FRIEDEWALD and her health care providers were, and remain, unskilled in the research, design, and manufacture of the Lipogems system and

reasonably relied on the skill, judgment and implied warranty of Defendants LIPOGEMS and CARLO TREMOLADA, M.D. in using the Lipogems system.

44.     Defendants LIPOGEMS, individually and by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., knew or had reason to know that Plaintiff JULIE D. FRIEDEWALD and her physicians relied upon its skill and judgment as a leader in the industry to create, market, test, and sell a suitable and safe product.

45.     The Lipogems system was neither safe for its intended use nor of merchantable quality, as warranted by Defendants LIPOGEMS, individually and by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., in that the Lipogems system had dangerous propensities when put to its intended use and would cause severe injuries to the user.

46.     At the time it was manufactured and all times subsequent thereto, the Lipogems system was not as warranted and was unfit for the particular purpose for which it was intended in that it was defective, causing Plaintiff JULIE D. FRIEDEWALD to suffer injuries and damages.

47.     As a result of Defendants LIPOGEMS', individually and by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., breach of implied warranty of fitness for a particular purpose and the resulting dangers associated with the use of the Lipogems system, Plaintiff JULIE D. FRIEDEWALD suffered from and continues to suffer from severe and permanent injuries.

WHEREFORE, Plaintiff JULIE D. FRIEDEWALD, by and through her attorneys BARNEY & KARAMANIS, LLP, prays for judgment against Defendants LIPOGEMS INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC,

LIPOGEMS SPO, LLC, and CARLO TREMOLADA, M.D., in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and proper.

**COUNT V**
**BREACH OF EXPRESS WARRANTY – DEFENDANTS LIPOGEMS INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC, LIPOGEMS SPO, LLC and CARLO TREMOLADA, M.D.**

**1-47.** Plaintiff JULIE D. FRIEDEWALD hereby repeats and re-alleges paragraphs 1 through 47 of Count IV as paragraphs 1 through 47 of Count V as though fully set forth herein.

**48.** Defendants LIPOGEMS, individually and by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., expressly warranted to the public, including Plaintiff JULIE D. FRIEDEWALD through her physicians, that the Lipogems system was safe, effective, fit, and proper for its intended use through its advertising and marketing.

**49.** Defendants LIPOGEMS, individually and by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., made the aforementioned warranties through statements it made orally and in publications, through LIPOGEMS-sponsored conventions for medical professionals, package inserts, promotional and other written, oral, and electronically disseminated statements and materials provided to the medical trade journals and mass-market publications.

**50.** As a result of Defendants LIPOGEMS', individually and by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., breach of express warranty, Plaintiff JULIE D. FRIEDEWALD suffered from and continues to suffer from severe and permanent injuries.

WHEREFORE, Plaintiff JULIE D. FRIEDEWALD, by and through her attorneys BARNEY & KARAMANIS, LLP, prays for judgment against Defendants LIPOGEMS INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC, LIPOGEMS SPO, LLC, and CARLO TREMOLADA, M.D., in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and proper.

## COUNT VI

### NEGLIGENT MISREPRESENTATION – DEFENDANTS LIPOGEMS INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC, LIPOGEMS SPO, LLC and CARLO TREMOLADA, M.D.

**1-50.** Plaintiff JULIE D. FRIEDEWALD hereby repeats and re-alleges paragraphs 1 through 50 of Count V as paragraphs 1 through 50 of Count VI as though fully set forth herein.

**51.** Defendants LIPOGEMS, individually and by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., from the time the Lipogems system was first tested, studied, researched, first manufactured, marketed and distributed, and up to the present, made false representations, as previously set forth herein, to JULIE D. FRIEDEWALD, her health care providers, and the general public, including but not limited to the misrepresentation that the Lipogems system was safe, fit, and effective for human consumption.

**52.** At all times relevant hereto, Defendants LIPOGEMS, individually and by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., conducted a sales and marketing campaign to promote the sale of the Lipogems system and willfully deceived JULIE D. FRIEDEWALD, her healthcare providers, and the general public as to the health risks and consequences of the use of the Lipogems system.

14

53.      As part of the aforementioned campaign, Defendants LIPOGEMS, individually and by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., made the following misrepresentations without any reasonable ground for believing them to be true:

   a.      That the Lipogems system was safe, fit, and effective for human use, knowing that said representations were false, and concealing from the user, their physicians, and general public that the Lipogems system had a serious propensity to cause injuries to users;

   b.      Engaging in an advertising campaign designed to create the image, impression, and belief by consumers and physicians that the use of the Lipogems system was safe for a variety of therapeutic and cosmetic uses and concealing its dangerous properties, even though Defendants knew these representations to be false and even though Defendant had no reasonable grounds to believe the Lipogems system was safe for the general public;

   c.      Purposely downplaying and understating the health hazards and risks associated with the Lipogems system; and

   d.      Issuing promotional literature, commercials, and conducting mass-media and promotional presentations deceiving potential users of the Lipogems system by relaying positive information, including manipulating and/or omitting statistics to suggest widespread acceptability and safety, while downplaying the known adverse and serious health effects and concealing materially relevant information regarding the safety of the Lipogems system.

54.      These misrepresentations were made by Defendants LIPOGEMS, directly through its sales representatives, President Defendant CARLO TREMOLADA, M.D., and other authorized agents, and in publications, mass-media outlets, and other written materials directed toward both patients and physicians, with the intention of inducing reliance and the prescription, purchase, and use of the Lipogems system.

55.      Defendants LIPOGEMS sponsors conferences for physicians and medical professionals throughout the United States several times a year. At these conferences, Defendants LIPOGEMS, by and through its sales representatives, President Defendant CARLO

TREMOLADA, M.D., and other authorized agents, represents that the Lipogems system is "safe" and "well-tolerated" for all purposes, despite knowing that said representations are unsubstantiated and often false, and meanwhile, conceals from physicians and medical professionals, and ultimately the user, that the Lipogems system has a propensity to cause injuries to users.

56.     The foregoing representations by Defendants LIPOGEMS, by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., were in fact false, in that the Lipogems system is not safe, fit, and effective for human use, the use of the Lipogems system is hazardous to health, and the Lipogems system has significant propensity to cause serious injuries to users, including but not limited to the injuries suffered by JULIE D. FRIEDEWALD as described above.  The foregoing misrepresentations by Defendants were made with the intention of inducing reliance and the prescription, purchase, and use of the Lipogems system.

57.     In reliance on the misrepresentations by Defendants, Plaintiff JULIE D. FRIEDEWALD was induced to purchase and use the Lipogems system, and her healthcare providers were induced to prescribe and use it.  If each of them had known of the true facts and the facts concealed by Defendants, Plaintiff JULIE D. FRIEDEWALD would not have used the Lipogems system.  Their reliance upon Defendants' misrepresentations was justified because misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

58.     As a result of Defendants LIPOGEMS', individually and by and through its actual and/or apparent agents, employees, servants, and/or representatives, including but not limited to Defendant CARLO TREMOLADA, M.D., negligent mirespresentations, Plaintiff JULIE D. FRIEDEWALD suffered from and continues to suffer from severe and permanent injuries.

16

WHEREFORE, Plaintiff JULIE D. FRIEDEWALD, by and through her attorneys BARNEY & KARAMANIS, LLP, prays for judgment against Defendants LIPOGEMS INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC, LIPOGEMS SPO, LLC, and CARLO TREMOLADA, M.D., in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and proper.

**COUNT VII**
**MEDICAL NEGLIGENCE – DEFENDANTS SUMMIT HEALTH CENTER, LLC,**
**MARK J. HOLTERMAN, M.D. AND CARLO TREMOLADA, M.D.**

**1-27.**   Plaintiff JULIE D. FRIEDEWALD hereby repeats and re-alleges paragraphs 1 through 27 of this Complaint as paragraphs 1 through 27 of Count VII, as though fully set forth herein.

**28.**   On May 9, 2015, Defendant SUMMIT, by and through its actual and/or apparent agents, servants, and/or employees, including but not limited to Defendants MARK J. HOLTERMAN, M.D. and CARLO TREMOLADA, M.D., and each of them, had a duty to comply with the applicable standards of care for reasonably well qualified medical professionals, and to be free from negligence.

**29.**   Contrary to the aforementioned duty, while caring for Plaintiff JULIE D. FRIEDEWALD, Defendant SUMMIT, by and through its actual and/or apparent agents, servants, and/or employees, including but not limited to Defendants MARK J. HOLTERMAN, M.D. and CARLO TREMOLADA, M.D., and each of them, deviated from the accepted standards of care in one or more of the following respects:

      **a.**   Violently and/or negligently performed the surgical procedure causing trauma and injury to the arterial structures in the face that communicate with the ophthalmic artery;

      **b.**     Injured the Plaintiff's angular artery during the aforementioned surgical procedure;

      **c.**     Inappropriately placed the adipose cells in close proximity to the angular artery;

      **d.**     Failed to properly place the adipose cells and avoid injury to surrounding vasculature;

      **e.**     Failed to properly inform and communicate all risks of the procedure, including the risk of blindness, to Plaintiff JULIE D. FRIEDEWALD; and

      **f.**     Allowed an unlicensed physician to perform the surgical procedure on Plaintiff JULIE D. FRIEDEWALD.

**30.**     As a direct and proximate result of one or more of the aforementioned deviations from the standard of care on the part of the Defendants, Plaintiff JULIE D. FRIEDEWALD suffered and continues to suffer from severe and permanent injuries. *See* Plaintiff's 735 ILCS 5/2-622 Report attached hereto as Exhibit "A"; *see also,* Affidavit of James A. Karamanis attached hereto as Exhibit "B."

     WHEREFORE, Plaintiff JULIE D. FRIEDEWALD, by and through her attorneys BARNEY & KARAMANIS, LLP, prays for judgment against Defendants SUMMIT HEALTH CENTER, LLC, an Illinois Corporation, MARK J. HOLTERMAN, M.D., individually and as agent, servant, or employee of Summit Health Center, LLC, and CARLO TREMOLADA, M.D., individually and as agent, servant, or employee of Summit Health Center, LLC, in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and proper.

## COUNT VIII
**MEDICAL BATTERY – DEFENDANTS SUMMIT HEALTH CENTER, LLC AND CARLO TREMOLADA, M.D.**

**1-30.**   Plaintiff JULIE D. FRIEDEWALD hereby repeats and re-alleges paragraphs 1 through 30 of this Count VII as paragraphs 1 through 30 of Count VIII, as though fully set forth herein.

**31.**   On May 9, 2015, Plaintiff JULIE D. FRIEDEWALD underwent a lipoaspiration and bilateral cheek injection procedure at Summit Center for Health in or around Oak Brook, Illinois.

**32.**   That procedure was supposed to be performed by Defendant Dr. Holterman, and Plaintiff consented to Dr. Holterman performing the procedure.

**33.**   However, on May 9, 2015, Defendant Holterman allowed Defendant Carlo Tremolada, M.D. to perform a portion of the procedure on Plaintiff Julie Friedewald.

**34.**   At no time had Plaintiff to consented to be touched or operated on by Carlo Tremolada, and in fact Defendant Tremolada does not have a license to practice medicine in Illinois, and upon information and belief does not have a license to practice medicine anywhere within the United States.

**35.**   Plaintiff had no expectation and never consented to be operated upon by any individual whom did not have a valid medical license in the State of Illinois.

**36.**   Defendant CARLO TREMOLADA, M.D. is therefore liable in tort to Plaintiff due to their following tortious actions:

   a.   On May 9, 2015, carelessly and negligently performing lipoaspiration and bilateral cheek injection procedure for which Plaintiff had not given her written or verbal consent;

b. On May 9, 2015, performing a procedure without a valid medical license for the State of Illinois for which Plaintiff had not given her written or verbal consent; and

37. As a direct and proximate result of one or more of the batteries on the part of the Defendant Tremolada, Plaintiff JULIE D. FRIEDEWALD suffered and continues to suffer from severe and permanent injuries.

WHEREFORE, Plaintiff JULIE D. FRIEDEWALD, by and through her attorneys BARNEY & KARAMANIS, LLP, prays for judgment against Defendants SUMMIT HEALTH CENTER, LLC, an Illinois Corporation, and CARLO TREMOLADA, M.D., individually and as agent, servant, or employee of Summit Health Center, LLC, in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and proper.

### COUNT IX
**INSTITUTIONAL NEGLIGENCE – DEFENDANTS SUMMIT HEALTH CENTER, LLC, by and through its agents including but not limited to MARK J. HOLTERMAN, M.D. and/or CARLO TREMOLADA, M.D.**

**1-37.** Plaintiff JULIE D. FRIEDEWALD hereby repeats and re-alleges paragraphs 1 through 37 of this Complaint as paragraphs 1 through 37 of Count IX, as though fully set forth herein.

38. On May 9, 2015, Defendant SUMMIT, by and through its actual and/or apparent agents, servants, and/or employees, including but not limited to Defendants MARK J. HOLTERMAN, M.D. and CARLO TREMOLADA, M.D., and each of them, had a duty to comply with the applicable standards of care for reasonably well qualified medical professionals, and to be free from negligence.

**39.**     That on or about May 2015, Defendant Summit had certain policies and/or procedures in effect relating to the administration of the health care facility.

**40.**     Defendant Summit had a duty to keep and maintain policies and procedures in place to ensure for the proper administration of surgical and other medical procedures at the health care facility.

**41.**     Notwithstanding the aforementioned duty, Defendant Summit, individually and by and through its agents, servants and/or employees, including but not limited to Defendants Holterman and Tremolada, and each of them, was guilty of one or more of the following acts and/or omissions:

     a.   Failed to appropriately operate, manage, maintain, administrate and/or control the healthcare staff and/or equipment at the health care facility;

     b.   Failed to have in effect adequate policies and/or procedures in place to provide direction to those health care providers performing the procedure on Plaintiff;

     c.   Failed to have in effect adequate policies and/or procedures establishing preventative measures to ensure someone without a valid medical license was not performing procedures on patients;

     d.   Failed to regularly update the policies and/or procedures that were in effect for the surgical staff, nursing staff, and/or equipment at the health care facility; and

     e.   Failed to establish adequate policies and/or procedures for a lipoaspiration and bilateral cheek injection procedure.

**42.**     As a direct and proximate result of one or more of the aforementioned deviations from the standard of care on the part of the Defendants, Plaintiff JULIE D. FRIEDEWALD suffered and continues to suffer from severe and permanent injuries.

WHEREFORE, Plaintiff JULIE D. FRIEDEWALD, by and through her attorneys BARNEY & KARAMANIS, LLP, prays for judgment against Defendants SUMMIT HEALTH CENTER, LLC, an Illinois Corporation, MARK J. HOLTERMAN, M.D., individually and as agent, servant, or employee of Summit Health Center, LLC, and CARLO TREMOLADA, M.D., individually and as agent, servant, or employee of Summit Health Center, LLC, in an amount in

21

excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and proper.

## COUNT X

### RES IPSA LOQUITUR – Against All Defendants

**1-42.** Plaintiff JULIE D. FRIEDEWALD hereby repeats and re-alleges paragraphs 1 through 42 of this Complaint as paragraphs 1 through 42 of Count X, as though fully set forth herein.

**43.** At all times material and relevant here, Defendants, and each of them, had exclusive and sole control, direction and management of the care and treatment of Plaintiff Friedewald.

**44.** Plaintiff exercised absolutely no direction, control or management over herself.

**45.** Each Defendant's direction, control or management over the care and treatment of Plaintiff Friedewald, was the sole, direct and proximate cause of the injuries to, and did injure Plaintiff Friedewald.

**46.** Said occurrence speaks for itself, i.e., in the ordinary course of things, Plaintiff Friedewald's injuries would not have taken place had Defendants not negligently failed to use proper Products, care in the treatment, direction, control or management of Plaintiff Friedewald, which was under their exclusive control, direction and management.

**47.** As a direct and proximate result of Defendants' negligence, Plaintiff Friedewald suffered severe and permanent injuries, both externally and internally to her person and lost the chance of recovery. Plaintiff Friedewald became disabled from these injuries and will remain so in the future, and further, Plaintiff Friedewald suffered great physical pain and mental anguish, and will continue to do suffer in the future. In endeavoring to alleviate and cure her injures, Plaintiff Friedewald was caused to expand and become liable for, and in the future will expend and become liable for, large sums of money to treat her injuries.

22

WHEREFORE, Plaintiff JULIE D. FRIEDEWALD, by and through her attorneys BARNEY & KARAMANIS, LLP, prays for judgment against Defendants SUMMIT HEALTH CENTER, LLC, an Illinois Corporation, MARK J. HOLTERMAN, M.D., individually and as agent, servant, or employee of Summit Health Center, LLC, LIPOGEMS INTERNATIONAL, SpA, LIPOGEMS USA, INC., LIPOGEMS USA HOLDINGS, LLC, LIPOGEMS SPO, LLC, and CARLO TREMOLADA, M.D., and CARLO TREMOLADA, M.D., individually and as agent, servant, or employee of Summit Health Center, LLC and LIPOGEMS, in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), and for such other and further relief in favor of Plaintiff as this Court deems just and proper.

Respectfully Submitted,

**JULIE D. FRIEDEWALD**

By:_____/s/James A. Karamanis_____
                        One of Her Attorneys

James A. Karamanis (ARDC #6203479)
Kenneth A. Nazarian (ARDC #6309765)
Mary Williams
Barney & Karamanis, LLP
Two Prudential Plaza
180 N. Stetson, Suite 3050
Chicago, Illinois 60601
Tel.: 312/553-5300
James@bkchicagolaw.com

23

# EXHIBIT A

March 20, 2017

Mary Williams
Barney & Karamanis LLP, Attorneys at Law
Suite 3050, 180 North Stetson
Two Prudential Plaza
Chicago, IL 60601

RE: Julie Friedewald

Dear Ms. Williams:

I am a Physician licensed to practice Medicine in California, Mississippi, and the Bahamas. I am Board Certified in Orthopaedic Surgery through the American Academy of Orthopaedic Surgeons as well as Board Certified in Regenerative Medicine through the American Board of Regenerative Medicine.

I have served as an Assistant Professor of Orthopaedic Surgery at ⬛⬛⬛⬛⬛ from 2003 through 2006. In addition, I have previously served as the Chief of Surgery at the ⬛⬛⬛⬛⬛ Medical Center in ⬛⬛⬛ Georgia in 2000-2001.

I have practiced Orthopaedic Surgery as well as Regenerative Medicine for approximately 20 years.

The practice of Regenerative Medicine includes the use of fat acquisition/liposuction from a patient and the proper use of that fat for regenerative purposes in the body and face.

I have had the opportunity to review the case of Julie Friedewald. Ms. Friedewald underwent a procedure at the Summit Center for Health on 05/09/2015 in which she underwent a lipoaspiration with preparation of fat filler product (Lipogems system). She then underwent bilateral cheek injections using Lipogems.

I have had the opportunity to not only review the documentation from the operation, but I have also reviewed the videotapes available of the operation that were taken in the operating room.

Additional records that I have had the opportunity to review include those from The Woodlands Retina Center records from 10/18/2015, as well as the Cleveland Clinic main campus records from 06/06/2016 through 07/11/2016. I have also reviewed records from the Summit Center for Health from 05/09/2015 through 05/11/2015 as referenced above.

Ms. Friedewald unfortunately developed a loss of vision following the surgical procedure that was performed on 05/09/2015. The loss of vision occurred in the right eye in the months subsequent to the

RE: JULIE FRIEDEWALD
March 20, 2017
Page 2

procedure performed on 05/09/2015.

After reviewing the records stated above as well as directly viewing the videotapes of the procedure, I can state the following with a reasonable degree of medical certainty.

1. The surgical procedure that was performed on Ms. Julie Friedewald on 05/09/2015 at the Summit Center for Health in Oak Brook Terrace, Illinois was outside the standard of care with regard to the placement of fat into the face. I can say with a reasonable degree of medical certainty that the procedure performed was a violent trauma to the face, which caused injury to arterial structures in the face that communicate with the ophthalmic artery. Not only was the angular artery itself mechanically injured at the time of the procedure, but in addition, there was inappropriate placement of fat in the vicinity/location of the angular artery. It is well known that regenerative fat cells not only increase in number, but also stimulate other cells in the region to produce more volume in the form of collagen formation. These cells should have never been placed near the angular artery of the face. I can say with a reasonable degree of medical certainty that because of the surgical procedure that was performed on 05/09/2015, in which liposuction was performed and then the fat injected into the face, that the patient currently has blindness/decreased vision in the right eye.

2. I can also say with a reasonable degree of medical certainty that this patient was not properly informed of the risks of blindness during the preoperative informed consent process based on the fact that I have read the consent form that the patient signed prior to the procedure and under the risks section there is a significant breach in responsibility to properly inform the patient of the possibility of decreased vision/blindness.

3. The Lipogems product inserts and instructions have egregiously failed to emphasize blindness as a risk of using the product in facial injections.

4. Upon review of the Illinois Department of Financial and Professional Regulation, ther is no evidence that the Surgeon, Carlo Tremolada, has a license to practice or perform surgery in Illinois.

5. Based on the video of the Surgical procedure performed on Ms. Friedewald on 5/9/2015, the physician who signed the operative report, Mark Holterman, did not actually perform the surgical procedure. The surgery was performed by Carlo Tremolada, who does not have a license to practice Medicine or perform surgery on Humans in Illinois. Summit Center for Health was the Operating facility in which an injurious surgical procedure was performed on Julie Diane Friedewald by an unlicesned medical provider( Dr. Carlo Tremolada) and Supervised by Dr. Mark Holterman.

6. During the course of medical care, including the surgical procedure performed on Julie Diane Friedewald on 5/9/15, Dr. Mark Holterman performed negligent medical care and a meritorious cause of action exists against Dr. Mark Holterman

7. During the course of medical care, including the surgical procedure performed on Julie Diane Friedewald on 5/9/15, Dr. Carlo Tremolada performed negligent medical care and a meritorious cause of action exists against Dr. Carlo Tremolada.

8. During the course of medical care, including the surgical procedure performed on Julie Diane Friedewald on 5/9/15, Summit Center for Health participated in negligent medical care and a

RE: JULIE FRIEDEWALD
March 20, 2017
Page 3

meritorious cause of action exists against Summit Center for Health.

9. During the course of medical care, including the surgical procedure performed on Julie Diane Friedewald on 5/9/15, the Lipogems company ( whom Dr. Carlo Tremolada represents) participated in negligent care of the patient by not emphasizing the risk of blindness with injections to the face of fat processed with the Lipogems technique. The package insert for the Lipogem product does not adequately emphsize the risk of blindness. A meritorious cause of action exists against the Lipogems company.

The above statements that I have made regarding the fact that I can say with a reasonable degree of medical certainty that the patient has blindness in the right eye as a result of the 05/09/2015 surgical procedure is based on my knowledge of the proper use of liposuction product(fat) for regenerative purposes and the violation of basic surgical principles that were performed as evidenced during the videotaping of the procedure.

The negligent actions of the unlicensed operating surgeon, supervising physician, Summit Center for Health, failure of proper cautionary information from the Lipogems company, as well as the total lack of informed consent including the risk of blindness, misrepresented the procedure that led to the eventual blindness in the patient's right eye.

Sincerely,



# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JULIE D. FRIEDEWALD,

                Plaintiff

    vs.                                   Case No.

SUMMIT CENTER FOR HEALTH, LLC, an
Illinois Corporation, LIPOGEMS
INTERNATIONAL, SpA, an Italian
Corporation, LIPOGEMS USA, INC., a Georgia
Corporation, LIPOGEMS USA HOLDINGS,
LLC, a Georgia Limited Liability Corporation,
LIPOGEMS SPO, LLC, a Georgia Limited
Liability Corporation, MARK J. HOLTERMAN,
M.D., and CARLO TREMOLADA, M.D.,

                Defendants.

## AFFIDAVIT OF JAMES A. KARAMANIS

    Affiant, James A. Karamanis, first having been duly sworn on oath, deposes and states that if he were called to testify at trial, could competently and affirmatively testify to the following:

    1.     That the Affiant states that he is a resident of the State of Illinois, is over the age of eighteen years, and is not a party to the present cause of action;

    2.     That the Affiant states that he is a duly licensed attorney practicing law in the State of Illinois; and that he is practicing law at the law firm of Barney & Karamanis, LLP, whose offices are located at 180 N. Stetson, Suite 3050, Two Prudential Plaza, Chicago, Illinois 60601;

    3.     That the Affiant states that he is legal counsel for the Plaintiff, Julie Friedewald;

    4.     That Affiant states that the present cause is a Medical Malpractice suit and pursuant to 735 ILCS 5/2-622, also states that he has consulted and reviewed the facts of the instant case with a health care professional, and that the affiant reasonably believes the following:

            a.     Said health care professional is knowledgeable in the relevant issues involved in this particular action;

b.      Said health care professional is licensed to practice medicine in all of its branches;

c.      Said health care professional has reviewed the medical records, facts and other relevant material pertaining to the present cause;

d.      Said health care professional practices or has practiced within the last five years or teachers or has taught within the last five years in the same area of health care or medicine that is at issue in the particular action;

e.      That said health care professional meets the expert witness standards set forth in Paragraphs (a) through (d) of Section 8-2501 of the Illinois Code of Civil Procedure;

f.      That said health care professional determined in a written report, after a review of the medical records and other relevant materials involved in the particular action, that there is a reasonable and meritorious cause for the filing of such action; and

g.      That said health care professional is qualified by experience or demonstrated competence in the subject matter of this case.

5.      That Affiant states that he has concluded, on the basis of the reviewing the medical records and after consultation with the healthcare professional, that there is a reasonable and meritorious cause for filing the instant action.

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth herein are true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

          __/s/ James A. Karamanis_____
               James A. Karamanis

James A. Karamanis (ARDC #6203479)
Kenneth A. Nazarian (ARDC #6309765)
Barney & Karamanis, LLP
180 N. Stetson, Ste 3050
Chicago, Illinois 60601
Tel.:   312/553-5300
james@bkchicagolaw.com

2